**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:14-CV-32**

| | |
|---|---|
| WILLIAM JOHNNY MARTIN, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| CAROLYN W. COLVIN, ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**BEFORE THE COURT** are cross-motions for summary judgment filed by William Johnny Martin (Doc. 9) and the Commissioner (Doc. 12). Claimant is appealing the denial of his claim for disability insurance benefits.

## I. BACKGROUND OF THE LAW

The Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether an individual is disabled.[1] 20 C.F.R. §§ 404.1520(a) and 416.920(a). If it is determined that a claimant is or is not disabled at one step, the SSA or Administrative Law Judge will issue a decision without proceeding to the next step in the evaluation. A claimant's residual functional capacity ("RFC") is determined after step three has been completed, but before step four is begun, in order to determine what level of physical and

---

[1] 20 C.F.R. §§ 404.1520 and 416.920 articulate the five-step evaluation process: (1) if the claimant is performing substantial gainful activity, the SSA will automatically find that claimant is not disabled at the first step; (2) if the claimant does not have a medically determinable physical or mental impairment, or combination of impairments, that is severe and meets the duration requirement, the SSA will automatically find that claimant is not disabled at the second step; (3) if the severity and nature of claimant's impairment equals one of those listed in 20 CFR 404, Subpart P, App. 1, the SSA will automatically find that claimant is disabled at the third step, or the evaluation will proceed to assess claimant's residual functional capacity; (4) considering claimant's residual functional capacity, if claimant can perform past relevant work, the SSA will automatically find that claimant is not disabled at the fourth step; (5) considering claimant's residual functional capacity, age, education and work experience, if claimant can adjust to perform other work, the SSA will find that claimant is not disabled at the fifth step, or, if claimant cannot adjust to perform other work, the SSA must find that claimant is disabled.

1

mental exertion the claimant can perform at work. 20 C.F.R. § 404.1545(a) and § 416.945(a). The ALJ determines the RFC by assessing a claimant's ability to do physical and mental activities on a sustained basis, despite limitations from identified impairments and claimed symptoms that are reasonably consistent with objective medical evidence and supported by other evidence. 20 C.F.R. §§ 404.1529, 404.1545, 416.929, and 416.945.

## II. ADMINISTRATIVE HISTORY

On December 28, 2010, Claimant protectively filed applications for a period of disability and disability insurance benefits as well Title XVI supplemental security income. In both applications Claimant alleged disability beginning July 1, 2010. These claims were denied initially, upon reconsideration, and ultimately Administrative Law Judge ("ALJ") Clinton C. Hicks found Claimant not disabled in a decision issued April 26, 2013. Specifically, at step one, Claimant had not engaged in substantial activity since July 1, 2010. (Tr. 33). At step two, the ALJ found that Claimant had the following severe impairments: chronic obstructive pulmonary disease ("COPD"), emphysema, and anxiety. (Tr. 33). At step three, the ALJ found that Claimant did not meet the listings. (Tr. 34). The ALJ then assigned Claimant the RFC to

> [P]erform a light range of work . . . but can never climb ladders, ropes, or scaffolds; can only occasionally climb ramps and stairs; should avoid concentrated exposure to respiratory irritants such as pollutants, smoke, or fumes; should be able to change positions between sitting and standing hourly; and is limited to simple, routine, repetitive tasks in a non-production environment.

(Tr. 35). At step four, the ALJ found that Claimant could not perform past relevant work. (Tr. 37). At step five, the ALJ found that considering the Claimant's age, education, work experience and RFC, there are jobs that exist in significant in the national economy that the Claimant could perform. (Tr. 37). The ALJ used a vocational expert ("VE") to assist in this inquiry. (Tr. 38). Accordingly, the ALJ found that the Claimant was not under a disability. (Tr. 38).

## III. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner—so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456 (4th Cir.1990); *see also*, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Hancock v. Astrue*, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV. ANALYSIS

Claimant raises three issues on appeal. The first is whether the ALJ's RFC analysis is supported by substantial evidence. The second is whether the ALJ's credibility determination is supported by substantial evidence. The third is whether the ALJ submitted a complete hypothetical question to the vocational expert ("VE"). The Court will address these contentions in turn.

      A.      Whether the ALJ's RFC analysis is supported by substantial evidence

The vast majority of Claimant's argument rests on the ALJ's treatment of Dr. Auton. Specifically, Claimant argues that the ALJ improperly discredited the opinion of Dr. Auton, a treating physician.

      1.      Standards for Weighing a Treating Physician's Opinion

An ALJ must give controlling weight to the opinion of a claimant's treating physician when the opinion concerns the nature and severity of an impairment, is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the case record. 20 C.F.R. § 404.1527(c)(2). Therefore, a treating physician's opinion will not be entitled to controlling weight if it is unsupported by medically acceptable clinical and laboratory diagnostic techniques and/or inconsistent with other substantial evidence of record.[2] An ALJ must always give "good reasons" for the weight given or not given to a treating physician's opinions. § 404.1527(c)(2).

If a treating physician's opinion is not conclusive, the opinion must be evaluated and weighed considering (1) whether the physician has examined the claimant; (2) the length of the treatment relationship and frequency of examination; (3) the nature and extent of the treatment

---

[2] If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir.1996); *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992) (holding that a treating physician's opinion need not be afforded controlling weight).

4

relationship; (4) the supportability of the medical opinion; (4) the consistency of the opinion with the record as a whole; and (5) whether the physician is a specialist.  20 C.F.R. § 404.1527(c).

2.  Application

The ALJ discussed Dr. Auton's records several times in the opinion.  First, the ALJ noted that Dr. Auton's treatment records dated February 18, 2011 (Tr. 316-34) had similar findings to that of Lizette Retis; namely, that Claimant had equal breath sounds bilaterally with normal amplitude but no crackles, rubs, or wheezes.  (Tr. 35).  Next, the ALJ noted that Dr. Auton, in January of 2013, noted diffuse expiratory wheezes in both lungs, although oxygen saturation was at 97%.  (Tr. 35).  The ALJ also discussed the RFC questionnaire forms completed by Dr. Auton in October of 2011 (Tr. 487-490) and October of 2012 (Tr. 507-510).  Specifically, the ALJ recounted Dr. Auton's opinions that the Claimant's "symptoms are constantly severe enough to interfere with attention and concentration to perform simple work related tasks." (Tr. 36).  Further, the ALJ recounted that Dr. Auton stated that Claimant would have to lie down during the day beyond what is allowed by a conventional schedule of breaks and lunch.  (Tr. 36).  He summarized Dr. Auton's findings that Claimant could only walk about half a block for no more than five minutes at a time.  (Tr. 36).  He also discussed his opinion that Claimant would need the ability to change positions at will and would need unscheduled breaks of fifteen to twenty minutes every thirty to forty-five minutes.  (Tr. 36-37).  The ALJ also recounted Dr. Auton's finding that Claimant would be absent more than four times from work in a month.  (Tr. 37).  Finally, the ALJ cited Dr. Auton's letter that stated that Claimant's conditions in no way prevent him from providing appropriate care for a four-year-old child.  (Tr. 37).

Claimant takes issue with the following sentence: "The undersigned gives little weight to Dr. Auton's opinion, as it is not supported by his own medical records or any other examination,

and is inconsistent with the claimant's own activities, as discussed below." (Tr. 37). Claimant argues that this sentence is insufficient to satisfy the regulations stated above. The Court notes that the ALJ gave three reasons for discounting Dr. Auton's opinion. First, the ALJ stated that Dr. Auton's opinion is unsupported by any of his own medical records. Secondly, the ALJ stated that Dr. Auton's opinion is not supported by any other examination. Finally, the ALJ stated that Dr. Auton's opinion is inconsistent with Claimant's own activities. The Court finds that if these reasons are supported by substantial evidence, then the ALJ properly discounted the opinion of Dr. Auton in accordance with the regulations.

i. Dr. Auton's Records

Dr. Auton's records are part of the records obtained from Bowen Primary and Urgent Care. Specifically, Dr. Auton saw Claimant on January 18, 2011.[3] During the visit, Claimant self-reported that "BP is OK when sedintary [sic] but goes up when he move[s] around. The patient notes much anxiety and difficulty sleeping." (Tr. 316). Claimant was diagnosed with stress/anxiety and hypertension. (Tr. 317). However, Claimant's blood pressure was 118/80 and his oxygen saturation was 97%. Further, Dr. Auton found that that his breath sounds are equal bilaterally with normal amplitude and that there are no crackles, rubs, or wheezes.

Dr. Auton also saw Claimant on November 8, 2011 and October 3, 2011. (Tr. 523-525). During this time period, Dr. Auton found, among other things, that Claimant's chronic pain was currently stable and his hypertension was controlled.

---

[3] The Court notes that Claimant's counsel has committed what appears to be a transcription error in its argument. For example, by citing to Tr. 336-37 as well as Tr. 316-17, Claimant's counsel argues that Dr. Auton saw Claimant on January 18, 2011 **and** February 18, 2011. It is clear that the records from Tr. 316-17 are from January 18, 2011. It is also clear that Tr. 336-37 is the same record found in Tr. 316-17. Further, Claimant's counsel inappropriately cited Tr. 317 as evidencing a record from March 1, 2011. However, this record is referring to January 3, 2011 by using 2011-01-03. This becomes apparent when viewing Tr. 316-17, which states that it was made on 2011-01-18.

On December 7, 2011, Dr. Auton saw Mr. Martin for constipation and hot flashes. (Tr. 521-522). Claimant self-reported that Xanax was helping his anxiety and pain medication was working well. His blood pressure was listed as 106/68 and oxygen saturation was listed at 95%. (Tr. 521-22). On January 1, 2012, Dr. Auton saw Claimant for cold symptoms, which produced a brownish white sputum. (Tr. 520-21). Dr. Auton diagnosed him with acute sinusitis, chronic pain currently well controlled, and anxiety controlled. His blood pressure was 120/80 and oxygen saturation was at 98%. (Tr. 520).

On March 1, 2012 and February 14, 2012, Dr. Auton saw Mr. Martin regarding complaints of right ear pain; otherwise, Mr. Martin was "doing well." (Tr. 518-520). However, Dr. Auton noted that "[t]he nasal turbinates are erythernatous and boggy." (Tr. 518). Further, Dr. Auton found that Claimant had persistent acute sinusitis. His blood pressure was under control when taken at each visit. (Tr. 518-520).

On June 7, 2012, Dr. Auton saw Claimant. His blood pressure was 128/74 and had oxygen saturation of 98%. Claimant self-reported that he was "doing fairly well" other than having stomach pain when he ran out of medication. (Tr. 516-17).

On April 10, 2012, Claimant self-reported that he was getting more active and was doing well apart from allergies. His blood pressure was 120/68 and oxygen saturation was at 98%.

On September 11, 2012, Dr. Auton saw Claimant. Claimant self-reported his anxiety has increased since he was no longer prescribed Xanax. (Tr. 513). Further, Claimant stated he was having congestion that was causing a cough that produced sputum of a brown to yellow-brown color. (Tr. 513). Claimant also self-reported that his blood pressure had been "somewhat erratic" after being taken off Xanax. (Tr. 513). During this visit, Claimant had a blood pressure of 130/70 and had oxygen saturation of 93%. Also, Dr. Auton found that Claimant's chronic abdominal pain

was currently well controlled. (Tr. 513). Finally, hypertension was deemed "controlled" and COPD was "currently stable." (Tr. 513).

These records amply support the ALJ's finding that Dr. Auton's records do not support his two RFC questionnaires. The Court notes that the ALJ did not cite every piece of evidence supporting his decision to find that Dr. Auton's records did not support his own RFC questionnaires. However, the ALJ stated that he considered the entire record and "absent evidence to the contrary, we take [him] at [his] word." *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). As an aside, it is clear that the ALJ considered later portions of the record because he cited the letter written by Dr. Auton which entirely conflicts with his RFC findings. Put simply, Dr. Auton's records show that while Claimant may have had some impairments, these were well-controlled by medication and not as impactful as stated by Dr. Auton in his RFC questionnaires. This finding is buttressed by the fact that Dr. Auton found that Claimant could care for a four-year-old child.

ii. Other Examinations

Claimant also takes issue with the ALJ's analysis and finding that Dr. Auton's opinion was inconsistent with any other examination. Any purported errors identified by Claimant are at best harmless because substantial evidence supports the ALJ's ultimate finding of non-disability.

Claimant takes issue with the ALJ's treatment of John Bevis' opinion. However, the ALJ appropriately discounted this opinion (and credited Dr. Medford's opinion) because Mr. Bevis and co-signee Dr. Fiore went outside their specialty by assessing limitations based on physical impairments.

Further, Claimant references his own self-reports of varying blood pressures and isolated incidences of high blood pressure. However, Claimant later reported (and the medical evidence corroborates) that he has stayed within the normal range after receiving treatment. (Tr. 530).

Claimant also cites Dr. Goodson's report as establishing that he has a "chronic sinus problem." *See* (Doc. 10, at 9). However, Dr. Goodson did not assess Claimant with this condition. Rather, he was dictating what Claimant had reported to him. What Dr. Goodson found was that he had very coarse breath sounds bilaterally, coughed minimally, and was coarse. (Tr. 362). Dr. Goodson did report that Claimant had a persistent sinus infection, which is corroborated by other records such as Dr. Stitt's July 13, 2011 notation that Plaintiff was still dealing with his sinus infection and producing significant amounts of sputum. (Tr. 466). However, Dr. Auton's later records showed that this sinus infection improved with treatment. *See, e.g.,* (Tr. 521-25). Moreover, merely diagnosing Claimant with a sinus issue does not opine on the degree of its impact on a claimant's ability to work. As recognized by the ALJ, Claimant's own activities are inconsistent with his allegations regarding the impact of his symptoms.

               iii.   The Claimant's own activities

As recounted earlier, there is ample in the evidence that shows that Claimant's activities are inconsistent with the limitations Dr. Auton assessed. For example, the record shows that Claimant cares for a four-year-old; mows six acres worth of grass; performs household responsibilities such as cooking, cleaning, and laundry; and drives two to three times a day. The ALJ appropriately found that the active lifestyle that Claimant engaged in was inconsistent with the findings of Dr. Auton.

B. The ALJ's Credibility Determination is Supported By Substantial Evidence

The ALJ appropriately evaluated the intensity and persistence of Claimant's symptoms in accordance with the factors set forth in 20 C.F.R. § 404.1529(c), § 416.929(c)(1); SSR-96-7p.

Claimant identifies two areas where the ALJ purportedly erred. First, Claimant states that the ALJ did not appropriately weigh his testimony regarding his chronic cough and phlegm production as well as his limitations from his blood pressure. Secondly, Claimant argues that the ALJ ignored his testimony regarding difficulty manipulating his wrist and grabbing and holding things. Claimant claims that this was particularly harmful given Dr. Auton's finding that he would only be able to use his hands, arms, and fingers 20-25% of a workday and Dr. Stitt's finding that Claimant had some atrophy of the left forearm.

Once an ALJ has found an underlying medically determinable impairment that could reasonably be expected to produce a claimant's pain or other symptoms, he is required to evaluate the intensity and persistence of the symptoms. 20 C.F.R. §§ 404.1529(c)(1); 404.929(c)(1).

The Court need not repeat its analysis related to the sinus issue to uphold the ALJ's ruling regarding respiratory problems. The ALJ sufficiently recounted the available evidence so as to justify his findings regarding the intensity of the sinus issues; mentioning phlegm production was not necessary.

With regard to Dr. Auton's opinion, the Court finds that the ALJ adequately discounted his opinion as stated above. Dr. Stitt stated that Claimant had "some atrophy of the left forearm secondary to a work-related accident." (Tr. 468). Specifically, he found that "[t]here is a decreased grip on the right of 3/5, otherwise the physical exam with motor strength is within normal limits." (*Id.*). At the hearing, Claimant could make a fist. (Tr. 64). There is also

testimony that Claimant can drive; operates a lawn mower to cut six acres; washes; cooks; mops; vacuums; does laundry; and can care for a four-year-old child. All of these involve the use of the arms and hands. Given this, and the fact that the medical evidence only shows decreased grip strength on a single finger, the Court finds that the ALJ had substantial evidence to support his decision and any purported failure to discuss this testimony is harmless.

      C.      The ALJ Made a Correct Step 5 Finding

Claimant recasts his prior arguments to state that the ALJ inappropriately made a finding in Step 5 that there are jobs that exist in significant numbers in the national economy that the Claimant could perform. For the reasons stated above, the ALJ's finding is supported by substantial evidence.

**IT IS, THEREFORE, ORDERED THAT**

1. Claimant's Motion for Summary Judgment (Doc. 9) is **DENIED;**

2. The Commissioner's Motion for Summary Judgment (Doc. 12) is **GRANTED**; and

3. The Clerk is directed to close the case.

Signed: April 9, 2015

Richard L. Voorhees
United States District Judge